1  SCOTT A. FLAXMAN (SBN 241285)
   SCOTT A. FLAXMAN, ATTORNEY AT LAW
2  21 Buena Vista Road
   South San Francisco, CA 94080
3  Telephone: (415) 571-0582
   Facsimile: (650) 952-0409
4  scottflaxman@yahoo.com

5  Attorney for Plaintiff

6                                E-filing

7

8
                     IN THE UNITED STATES DISTRICT COURT
9
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11                          CV   Case No.            1534

12                                        COMPLAINT FOR VIOLATION OF
                                          FEDERAL REAL ESTATE SETTLEMENT
13                                        PROCEDURES ACT

14                                        **DEMAND FOR JURY TRIAL**

15  _____ )
                                        )
16  KARIM A. ALLAN,                     )
                                        )
17                        Plaintiff,    )
                                        )
18  vs.                                 )
                                        )
19  CORPORATION SERVICE COMPANY AS      )
                                        )
20  AGENT FOR CAPTIAL ONE SERVICES,     )
                                        )
21  RAMON LIMCUANDO GIL, INDIVIDUALLY   )
                                        )
22  AND AS AGENT FOR AMERIWEST          )
                                        )
23  FUNDING, CHRISTINA TAGLE, AN        )
                                        )
24  INDIVIDUAL, ANDREW J. GALE, AS AGENT)
                                        )
25  FOR GREENPOINT MORTGAGE FUNDING,    )

1  Doe 1 through Doe 10,                                    )

2

3                                    Defendants

4

5

6                          **PRELIMINARY STATEMENT**

7    1. This complaint is filed and these proceedings are instituted under the Real Estate

8       Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), seeking to recover

9       actual damages, treble damages, and court costs, by reason of Defendants' violations of

10      RESPA and Regulation X, 24 C.F.R. § 3500.1 et seq. ("Regulation X").     This

11      complaint is also brought to raise additional claims against Defendants for breach of

12      fiduciary duty and California Statutory, 'Deceit.' This complaint seeks actual damages

13      and punitive damages for those claims as well.

14

                               **JURISDICTION AND VENUE**
15
     2. Personal jurisdiction over Defendants is proper before this Court.
16

17
     3. Counts I and II of this action arise under and are brought pursuant to the Federal Real
18
        Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §2601 et seq.
19
        (hereinafter "RESPA"); thus, federal subject matter jurisdiction is properly founded
20
        upon 28 U.S.C. § 1331.
21

22
     4. This Court has supplemental jurisdiction over the pendent state claims, set out in
23
        Counts III and IV pursuant to 28 U.S.C. § 1367.
24

25

5. Venue over Defendants is proper before this Court pursuant to 28 U.S.C. §1391(b)(2) and 12 U.S.C. § 2614.

## STATUTORY FRAMEWORK OF RESPA

6. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22[rd], 1974.

7. Congress noted that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

8. One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees." 12 U.S.C. § 2601(b).

9. RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. § 2602(1). RESPA initially applied only to certain first liens on residential real property. On October 28, 1992, the law was amended to cover subordinate liens and loans used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

10. RESPA prohibits kickbacks and referral fees: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or

COMPLAINT FOR FEDERAL RESPA VIOLATIONS - 3

understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

11. RESPA prohibits unearned fees: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

12. RESPA requires that the lender provide to the borrower a settlement statement which shall "conspicuously and clearly itemize all charges imposed upon the borrower ... in connection with the settlement." 12 U.S.C. § 2603(a).

13. RESPA requires that the lender and mortgage broker provide to the borrower "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement." 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7.

14. The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ...the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)." 12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

**PARTIES**

9.    Plaintiff:

   a.  **KARIM ALLAN ("Mr. Allan"),** an individual, is a 48 year old naturalized United States citizen. Mr. Allan is Palestinian by birth, speaks and reads limited English and he is employed in the automotive repair industry.

10. Defendants:

   a.  **GREENPOINT MORTGAGE** ("Defendant GreenPoint") was, at all times relevant to this matter and upon information and belief, a corporation, doing business as GreenPoint Funding, GreenPoint Mortgage Funding and GreenPoint, through a branch office located at 100 Wood Hollow Drive, Novato, California 94945.

   b.  **CAPITAL ONE SERVICES**: ("Defendant Capital One") was, at all times relevant to this matter and upon information and belief, a corporation, with a wholly-owned subsidiary doing business as GreenPoint Mortgage and GreenPoint Funding and GreenPoint through a branch office located at 100 Wood Hollow Drive, Novato, California 94945.

   c.  **AMERIWEST FUNDING.** ("Defendant Ameriwest"), a corporation, with its main office at: 1380 A Street, Hayward, California 94551.

   d.  **RAMON LIMCUANDO GIL** ("Defendant Gil"), an individual, was, upon information and belief, at all times relevant to this action, the corporate officer for Defendant Ameriwest.

e. **CHRISTINA TAGLE** ("Defendant Tagle"), an individual, was, upon information and belief upon all times relevant to this matter, either an employee or independent contractor of working for Defendant Ameriwest. Defendant Tagle changed her name to Christina Tagle from Christina Shatra or Christina Shatara. At all times relevant to this matter, Defendant Tagle's name was Christina Shatra or Christina Shatara. Plaintiff is not certain as to the correct spelling of Defendant Tagle's first name or last name. Upon information and belief Defendant Tagle's first name could be Cristina.

f. **ANDREW J. GALE** ("Defendant Gale"), an individual was, upon all times relevant to this matter, the designated officer of Defendant GreenPoint.

g. **DOE 1 THROUGH DOE 10:** Plaintiff does not know the true names of defendants named as Doe 1 through Doe 10.

### FACTS

15. The Plaintiff, Karim Allan, an individual, hereinafter ("Mr. Allan") is the owner of real property located at 1719 Kehoe Avenue, San Mateo, California 94401 ("Property") where he also resides.

16. Upon information and belief, at all times material to this action, Defendant Gil, Defendant Gale, Defendant Capital One, Defendant Ameriwest, Defendant GreenPoint and Doe 1 through Doe 10 made residential loans, including "federally related loans" as that phrase is defined by RESPA.

17. Upon information and belief, at all times material to this action, Defendant Gil and Defendant Ameriwest conducted business as a "mortgage broker" as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2. As such, Defendant Ameriwest and Defendant Gil, provided real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and at 24 C.F.R. § 3500.2.

18. On or about October, 2006 Mr. Allan discussed the possibility of refinancing the Property with Defendant Tagle.

19. Upon information and belief, at all times relevant herein, Defendant Tagle was acting as agent and/or employee of Defendant Ameriwest and Defendant Gil.

20. Mr. Allan's only information and communication, prior to the date of loan closing, regarding the refinancing of the Property came from information supplied by Defendant Tagle either in person or by telephone.

21. Defendant Tagle agreed to serve as Mr. Allan's agent and to provide him with mortgage brokerage services in connection with Mr. Allan's desire to refinance the existing loans on the Property. In fact, Defendant Tagle represented to Mr. Allan that Defendant Tagle and Defendant Tagle's company, Defendant Ameriwest, would assist Mr. Allan in obtaining a good loan at a low interest rate.

22. Defendant Tagle represented to Mr. Allan that the total fee Defendant Tagle, Defendant Gil and Defendant Ameriwest would receive for the mortgage brokerage

services in connection with the refinance of the Property would not exceed a total of $3,000.00 (three thousand dollars).

23. Pursuant to 12 U.S.C. §§ 2604 and 2607, Defendant Ameriwest, Defendant Gil and Defendant Tagle were obligated to disclose fully all costs, expenses, and fees from others, and not to accept any kickbacks from others, associated with the "federally related mortgage loan" and Defendant Ameriwest, Defendant Gil and Defendant Tagle's provision of mortgage brokerage services.

24. Defendant Tagle provided to Mr. Allan and Defendants Gil and Ameriwest and Doe 1 through Doe 10, loan application information and paperwork necessary to secure a "federally related mortgage loan."

25. Upon information and belief, the existing first loan on the Property was secured by a Deed of Trust with Home Coming Funding as the beneficiary. The existing second loan on the Property was secured by a Deed of Trust with Wells Fargo as the beneficiary.

26. Upon information and belief the loans supplied for the refinance were brokered by Defendant Ameriwest and Defendant Gil and funded by Defendant Capital One and Defendant GreenPoint. Funds from the refinance were paid out to Home Coming Funding in satisfaction of the First Trust Deed secured by the Property in the amount of $556,000.00. Funds were paid out to Wells Fargo in satisfaction of the Second Trust Deed secured by the Property in the amount of $137,977.00.

27. On or about November 30, 2006 Defendant Tagle, Defendant Gil, Defendant Ameriwest, Defendant Capital One, Defendant GreenPoint and Doe 1 through Doe 10 conducted a loan closing to consummate the residential loans to Mr. Allan from Defendant GreenPoint and Defendant Capital One, such loan being a "federally related mortgage loan" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

28. Upon information and belief, the loan closing was conducted at North America Title Company, 39488 Stevenson Place, #109 North, Fremont, California 94539.

29. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by the Property and for personal, family or household purposes.

30. On or about November 30, 2006, Mr. Allan received a "Borrower's Estimated Closing Costs Statement ("Closing Cost Statement"), dated November 30, 2006.

31. A true and accurate copy of the "Closing Cost Statement" is attached to this complaint as Exhibit A, and by this reference is incorporated herein [*not reprinted herein*].

32. On or about November 30, 2006, Defendant GreenPoint issued a set of documents, entitled, 'Lender's Closing Instructions' ("GreenPoint Instructions"), page 3 of 8 of GreenPoint Instructions is attached to this complaint as Exhibit B, and by this reference is incorporated herein [*not reprinted herein*], states:

'Yield Spread Premium           Lender PD: $19,200.00'

33. On or about November 30, 2006, Defendant Capital One, Defendant GreenPoint and/or Defendant Gil and Defendant Ameriwest issued a document entitled, 'Uniform Residential Loan Application.' ("Loan Application"), page 3 of 4 of Loan Application is attached to this complaint as Exhibit C and by this reference is incorporated herein *[not reprinted herein]*, states on line k:

'Borrower's closing costs paid by Seller           -19,200.00'

34. On or about November 30, 2006, Defendant GreenPoint issued a document entitled, 'GreenPoint Mortgage Funding, Inc., BROKER FUNDS DISBURSEMENT INSTRUCTIONS" addressed to North American Title Company at 39488 Stevenson Place, #109 North, Fremont, California 94539. ("Yield Spread Payment Sheet"). A True and correct copy of the Yield Spread Payment Sheet is attached hereto as Exhibit D and by this reference is incorporated herein *[not reprinted herein]* and states,'

'The funds to pay the broker fees at time of closing may be included in the wire/draft amount sent to you. Unless notified otherwise by **GreenPoint Mortgage Funding, Inc.** these funds are to be distributed by you after recordation of the loan to:

AmeriWest Funding & Realty Group Inc.

1380 A Street

Hayward, California 94541

1    in the amount of:

2

3    Origination Pts: 0.500    % 640,000        = 3,200.00

4    Broker Points:    0.000    % 640,000        = 0.00

5        Rebate    (3.00    %)        = 19,200.00

6    Broker Service Release Premium/**Broker Rebate** =

7    Fees paid from rebate                = 0.00

8        **SUBTOTAL**                = 22,400.00

9

10    Broker Processing                = 2,785.00

11

12

13        **TOTAL DUE BROKER**        **25,185.00** [emphasis in the original]

14

15    35. Defendant Greenpoint and Defendant Capital One in fact paid this fee as a kickback in

16        connection with Defendant Tagle, Defendant Gil and Defendant Ameriwest's referral

17        of Mr. Allan to Defendant GreenPoint and Defendant Capital One, for the purpose of

18        making a "federally related mortgage loan" to Mr. Allan.

19

20    36. Defendant Greenpoint and Defendant Capital One's payment of this steering fee

21        increased Mr. Allan's settlement costs. Defendant GreenPoint and Defendant Capital

22        One arranged with Defendant Ameriwest, Defendant Tagle and Defendant Gil to

23        charge Mr. Allan a higher interest rate than Defendant GreenPoint and Defendant

24        Capital One had originally approved for Mr. Allan as this was the way of providing the

25

funds to pay the kickback to Defendant Ameriwest, Defendant Gil and Defendant Tagle.

37. Mr. Allan had excellent credit at all times relevant to this complaint as evidenced by the "Disclosure of Credit Score Information" produced for GreenPoint Mortgage and dated November 9th, 2006. ("Karim Allan's Credit Score"). A True and correct copy of the Karim Allan's Credit Score is attached hereto as Exhibit E and by this reference is incorporated herein [*not reprinted herein*].

38. This fee for steering was paid indirectly by Mr. Allan through a higher interest rate than that for which he was otherwise qualified and for inferior loan terms than that which Mr. Allan could have otherwise received.

39. Defendant GreenPoint and Defendant Capital One paid this fee or kickback pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Ameriwest, Defendant Tagle and Defendant Gil to Defendant GreenPoint and Defendant Capital One.

40. At all times relevant herein, Mr. Allan, had no understanding and received no explanation of the fact that Defendant GreenPoint and Defendant Capital One paid this "yield spread premium" fee to Defendant Ameriwest, Defendant Tagle and/or Defendant Gil as a kickback for Defendant Tagle, Defendant Gil and Defendant Ameriwest steering Mr. Allan to Defendant GreenPoint and Defendant Capital One for a higher-interest rate loan.

41. At all times relevant herein, Mr. Allan had no understanding and received no explanation of the fact that this "yield spread premium" fee was paid indirectly by Mr. Allan through a higher interest rate than he was otherwise qualified for and than Defendant GreenPoint and Defendant Capital One would have otherwise approved for him.

42. Neither Defendant GreenPoint, Defendant Capital One, Defendant Tagle, Defendant Gil nor Defendant Ameriwest disclosed to Mr. Allan that Defendant GreenPoint and Defendant Capital One's payment of this "yield spread premium" fee to Defendant Ameriwest, Defendant Gil and/or Defendant Tagle constituted a kickback or referral fee at or prior to the time that Defendant Tagle, Defendant Gil and Defendant Ameriwest made the referral to Defendant GreenPoint and Defendant Capital One in connection with Defendant GreenPoint and Defendant Capital One making a "federally related mortgage loan" to Mr. Allan.

43. Mr. Allan was not advised in a manner that he was reasonably capable of understanding that there was a pre-payment penalty on the new loans.

## COUNT I

## RESPA VIOLATIONS

### (AGAINST DEFENDANT GREENPOINT AND DEFENDANT CAPITAL ONE)

44. All paragraphs of this complaint are incorporated herein as if fully restated.

45. Based on the foregoing facts, Defendant GreenPoint and Defendant Capital One violated RESPA with respect to Mr. Allan by:

46. giving or paying fees, kickbacks or other things of value to Defendant Ameriwest, Defendant Gil and/or Defendant Tagle pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred by Defendant Tagle, Defendant Gil and Defendant Ameriwest to Defendant GreenPoint and Defendant Capital One in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(b); and

47. giving or accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

48. Pursuant to 12 U.S.C. § 2607(d), Mr. Allan is entitled to recover, and hereby seeks to collect, from Defendant GreenPoint and Defendant Capital One an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Mr. Allan as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

1

**COUNT II**

2

**RESPA VIOLATIONS**

3

**(AGAINST DEFENDANT AMERIWEST, DEFENDANT GIL AND DEFENDANT**

4

**TAGLE)**

5

6

49. All paragraphs of this complaint are incorporated herein as if fully restated.

7

8

50. Based on the foregoing facts, Defendant Ameriwest, Defendant Gil and Defendant

9

Tagle violated RESPA with respect to Mr. Allan by:

10

11

51. accepting fees, kickbacks or other things of value from Defendant GreenPoint and

12

Defendant Capital One pursuant to an agreement or understanding that business

13

incident to or a part of a real estate settlement service involving federally related

14

mortgage loans would be referred to Defendant GreenPoint and Defendant Capital One

15

in violation of 12 U.S.C. § 2607(1) and 24 C.F.R. § 3500.14(b); and

16

17

52. giving or accepting a portion, split, or percentage of charges made or received for the

18

rendering of a real estate settlement service in connection with a transaction involving

19

a federally related mortgage loan other than for services actually performed, in

20

violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

21

22

53. Pursuant to 12 U.S.C. § 2607(d), Mr. Allan is entitled to recover, and hereby seeks to

23

collect from Defendant Tagle, Defendant Gil and from Defendant Ameriwest an

24

amount equal to three times the amount of any and all charges for "settlement services"

25

paid directly or indirectly by Mr. Allan, as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

## COUNT III

## BREACH OF FIDUCIARY DUTY

## (AGAINST DEFENDANT AMERIWEST, DEFENDANT GIL

## AND DEFENDANT TAGLE)

54. All paragraphs of this complaint are incorporated herein as if fully restated.

55. Upon information and belief, Defendant Ameriwest and Defendant Gil, collectively were the employer of or contracted with Defendant Tagle and had as their agent Defendant Tagle who solicited and intentionally induced the trust, confidence and reliance of Mr. Allan as home loan counselor and guide for Mr. Allan.

Defendant Tagle, Defendant Gil and Defendant Ameriwest's role as mortgage broker for Mr. Allan created fiduciary duties owed by Defendant Tagle, Defendant Gil and Defendant Ameriwest to Mr. Allan. These fiduciary duties were breached by the conduct set forth above, that was done for the sake of self-dealing and unjustified profits taken by Defendant Tagle, Defendant Gil and Defendant Ameriwest through the receipt of the "yield spread premium fee."

56. Mr. Allan is entitled to remedies that include imposition of a constructive trust upon the proceeds of the transaction as were paid to Defendant Ameriwest, Defendant Gil and/or Defendant Tagle, an order requiring disgorgement of all proceeds paid to

Defendant Ameriwest, Defendant Gil and/or Defendant Tagle, punitive damages and to other legal and equitable remedies to be imposed jointly and severally upon Defendant Ameriwest, Defendant Gil and Defendant Tagle.

### *COUNT IV*

### *DECEIT AS DEFINED IN CALIFORNIA CIVIL CODE* §§1709-1710
### *(AGAINST DEFENDANT AMERIWEST, DEFNDANT GIL AND DEFENDANT TAGLE)*

57. All paragraphs of this complaint are incorporated herein as if fully restated.

58. Upon information and belief, Defendant Ameriwest, Defendant Gil and Defendant Tagle made misrepresentations to Mr. Allan, as set forth above, including but not limited to statements that Defendant Ameriwest, Defendant Gil and Defendant Tagle would act in Mr. Allan's best interest to obtain a loan which would be to Mr. Allan's benefit and to obtain a loan with the best possible terms for Mr. Allan. In fact, Defendant Ameriwest, Defendant Gil and Defendant Tagle did not obtain a loan which was to Mr. Allan's benefit and in fact induced Mr. Allan to accept a loan on worse terms and with a higher interest rate than he could have otherwise obtained so that Defendant Ameriwest, Defendant Gil and Defendant Tagle could receive a "yield spread premium" kickback.

59. Defendant Tagle, Defendant Gil and Defendant Ameriwest misrepresented the amount that Defendant Tagle, Defendant Gil and Defendant Ameriwest were charging Mr. Allan for their services.

60. Defendant Ameriwest, Defendant Gil and/or Defendant Tagle suppressed the fact that the "yield spread premium" was a kickback payment and that ultimately Mr. Allan would end up paying for the improper kick-back through higher interest rates, other loan fees and generally less favorable loan terms. Defendant Ameriwest, Defendant Gil and Defendant Tagle were bound to disclose the nature of the kickback and the consequences to Mr. Allan but failed to do so.

61. Defendant Ameriwest, Defendant Gil and Defendant Tagle stated to Mr. Allan that the cost of the home loan brokerage service they provided to Mr. Allan would not exceed $3,000.00 (three thousand dollars).

62. In fact, the amount of the fee paid to Defendant Ameriwest, Defendant Gil and/or Defendant Tagle was $19,200.00 and, in fact, the fee paid to Defendant Ameriwest, Defendant Gil and/or Defendant Tagle was indirectly paid by Mr. Allan through

higher interest rates on his loans and generally worse loan terms than Mr. Allan could have otherwise received.

63. Defendant AmeriWest's, Defendant Gil's and Defendant Tagle's misleading acts and statements regarding Defendant Ameriwest's, Defendant Gil's and Defendant Tagle's products and services in fact did mislead Mr. Allan and proximately damaged Mr. Allan by causing him to pay more for products (his home loans) and services (mortgage brokerage) than the amount originally purported to be the price of these products and services.

64. California Civil Code § 1709 provides that:

One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

Deceit, within the meaning of CC § 1709, can take any of these forms (CC§1710):

i. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

ii. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

iii. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

iv. A promise, made without any intention of performing it.

65. Defendant Ameriwest, Defendant Gil and Defendant Tagle knew that their assertion regarding their fee and the true cost of their fee was false and Defendant Ameriwest, Defendant Gil and Defendant Tagle had no reasonable ground for believing their assertion regarding the fee to be true.

66. Defendant Ameriwest, Defendant Gil and Defendant Tagle knew that their assertion that they would procure the best loan on the best terms for Mr. Allan was false and they had no reasonable ground for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender, Defendant GreenPoint and Defendant Capital One and in exchange for Defendant Tagle, Defendant Gil and Defendant Ameriwest inducing Mr. Allan to contract to accept loans on worse terms than he could have possibly otherwise have gotten.

67. Defendant Ameriwest, Defendant Gil and Defendant Tagle knew that their assertion that their fee would not exceed $3,000 and they had no reasonable ground for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender to Defendant Ameriwest, Defendant Gil and Defendant Tagle in the amount of $19,200.00 and that this higher fee was actually going to be indirectly paid by Mr. Allan in the form of a higher interest rate and generally inferior loan terms than he could have otherwise received.

1

2

3    68. Defendant Ameriwest, Defendant Gil and Defendant Tagle knew that Mr. Allan did

4    NOT understand the phrase, "yield spread premium" and therefore were bound to

5    disclose additional, explanatory information to Mr. Allan and were bound to use

6    terminology and language understandable to Mr. Allan as the "yield spread premium"

7    payment had a dramatic, material affect on the loans Mr. Allan received, causing him

8    to pay a higher interest rate and to receive loan terms inferior to those he otherwise

9    could have had.

10

11

12

13

14    69. Defendant Ameriwest, Defendant Gil and Defendant Tagle promised that they would

15    procure the best loan on the best terms for Mr. Allan. The defendants made this

16    promise with no intention of performing it as they knew they would receive a kick-

17    back "yield spread premium" from the lender in exchange for inducing Mr. Allan to

18    contract to accept loans with higher interest rates and on worse terms than Mr. Allan

19    could have possibly otherwise have gotten.

20

21

22

23    70. The acts of Defendant Ameriwest, Defendant Gil and Defendant Tagle as set forth

24    above constitute Deceit under Cal. CC §§1709-1710 thereby entitling Mr. Allan to his

25

actual damages, including but not limited to: loans at the actual approval rates and loan

terms at the actual approval rate rather than inflated rates and more oppressive terms.

## PRAYER FOR RELIEF

71.  WHEREFORE, Mr. Allan requests judgment and relief as follows:

a.     under Count I against Defendant GreenPoint and Defendant Capital One for treble

damages and costs for RESPA violations;

b.     under Count II against Defendant Ameriwest, Defendant Gil and Defendant

Tagle, treble damages and costs for RESPA violations;

c.     under Count III against Defendant Ameriwest, Defendant Gil and Defendant

Tagle, actual damages, imposition of a constructive trust upon the proceeds of the

transaction as were paid to Defendant Ameriwest, Defendant Gil and/or

Defendant Tagle, and an order requiring disgorgement of all proceeds paid to

Defendant Ameriwest, Defendant Gil and/or Defendant Tagle and to punitive

damages for breach of fiduciary duty;

d.     under Count IV against Defendant Ameriwest, Defendant Gil and Defendant Tagle,

actual damages for Deceit;

e.     such other relief to which Mr. Allan may be entitled, or as determined just and

appropriate by this Court.

**DEMAND FOR JURY TRIAL**

Dated: March 19th, 2008

# EXHIBIT A



**NORTH AMERICAN TITLE COMPANY**

*Like Clockwork®*

39488 Stevenson Place, #109
Fremont, CA 94539

Phone: (510) 505-0811
Fax: (510) 505-0375

# BORROWER'S ESTIMATED CLOSING COSTS

ESCROW NO.: 54613-56240984-RGP
PROPERTY:
1719 Kehoe Avenue
San Mateo, CA

DATE:   November 30, 2006
CLOSING DATE:   December 6, 2006

BORROWER:
Karim Allam

| | DEBIT | CREDIT |
|---|---|---|
| | $ | $ |
| **FINANCIAL CONSIDERATION** | | |
| New 1st Trust Deed | | 640,000.00 |
| New 2nd Trust Deed | | 80,000.00 |
| | | |
| **LOAN INFORMATION - Greenpoint Mortgage Funding, Inc.** | | |
| **[Charges $6,844.88]** | | |
| Loan Origination Fee to Greenpoint Mortgage Funding, Inc. | 3,200.00 | |
| Tax Service to Greenpoint Mortgage Funding, Inc. | 79.00 | |
| Document Fee to Greenpoint Mortgage Funding, Inc. | 390.00 | |
| Underwriting Fee to Greenpoint Mortgage Funding, Inc. | 250.00 | |
| Flood Cert Fee to Greenpoint Mortgage Funding, Inc. | 11.00 | |
| Review Appraisal Fee to Greenpoint Mortgage Funding, Inc. | 200.00 | |
| Process/ Admin fee to Broker to Ameriwest Funding | 2,785.00 | |
| Interest at $17.5300/day from 12/05/2006 to 12/01/2006 to Greenpoint Mortgage Funding, Inc. | | 70.12 |
| | | |
| **LOAN INFORMATION - Greenpoint Mortgage Funding, Inc.** | | |
| **[Charges $64.52]** | | |
| Funding Fee to Greenpoint Mortgage Funding, Inc. | 150.00 | |
| Interest at $21.3700/day from 12/05/2006 to 12/01/2006 to Greenpoint Mortgage Funding, Inc. | | 85.48 |
| | | |
| **PAYOFF CHARGES - Homecomings Financial** | | |
| **[Total Payoff $559,592.01]** | | |
| Principal Balance | 556,000.00 | |
| Interest on Principal Balance to 11/27/2006 | 2,313.49 | |
| Interest on Principal Balance at $85.6800/day from 11/28/2006 to 12/12/2006 | 1,199.52 | |
| Demand/Statement Fee | 30.00 | |
| Reconveyance Fee | 30.00 | |
| Wire Fee | 5.00 | |
| Recording Fee(s) | 14.00 | |
| | | |
| **PAYOFF CHARGES - Wells Fargo** | | |
| **[Total Payoff $140,786.31]** | | |
| Principal Balance | 137,977.10 | |
| Interest on Principal Balance to 11/27/2006 | 2,187.03 | |
| Interest on Principal Balance at $38.3700/day from 11/28/2006 to 12/12/2006 | 537.18 | |
| Demand/Statement Fee | 30.00 | |
| Reconveyance Fee | 45.00 | |
| Tax Fee(s) | 10.00 | |
| | | |
| **OTHER DEBITS/CREDITS** | | |
| ESTIMATED for Hazard Insurance | 700.00 | |
| Notary | 250.00 | |
| | | |
| **TITLE/TAXES/RECORDING CHARGES*** | | |
| ALTA Loan Policy Fee Neg Am 110% to North American Title Company | 1,401.00 | |
| Other Lender Policy Fee to North American Title Company | 122.00 | |
| 1st Lender Endorsements 103.5 to North American Title Company | 25.00 | |
| Recording Trust Deed to North American Title Company | 80.00 | |
| Current Taxes 1st intstll 2006-07 to San Mateo County Tax Collector | 4,084.14 | |

EXHIBIT A

|                                                          | DEBIT      | CREDIT     |
|----------------------------------------------------------|------------|------------|
|                                                          |            |            |
| **ESCROW CHARGES**                                       |            |            |
| Escrow Fee to North American Title Company               | 574.00     |            |
| Document Preparation Fee to North American Title Company | 100.00     |            |
| Domestic Wire Fee to North American Title Company        | 25.00      |            |
| Courier/Overnight Fee to North American Title Company    | 80.00      |            |
| EDocs Processing Fee to North American Title Company     | 100.00     |            |
|                                                          |            |            |
| Refund                                                   | 5,171.14   |            |
|                                                          |            |            |
| TOTAL                                                    | $ 720,155.60 | $ 720,155.60 |

*Recording Fees include charges for services performed by North American Title Company, Inc., in addition to an estimate of payments to be made to governmental agencies.

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE. "Funds Required" must be in the form of a Cashier's Check or Wire Transfer, payable to: NORTH AMERICAN TITLE COMPANY**

Karim Allan

# EXHIBIT B

## SETTLEMENT CHARGES

*No changes to fees are allowed without our written approval. Final settlement fees must comply with applicable federal laws, rules, and regulations; and any applicable state laws or local ordinances.

| FEES | BUYER PD | SELLER PD | BROKER PD | LENDER PD | POC |
|---|---|---|---|---|---|
| Origination Fee to Broker * | $3,200.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Yield Spread Premium | $0.00 | $0.00 | $0.00 | $19,200.00 | $0.00 |
| Doc Prep Fee To GPM* | $390.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Tax Service Fee* | $79.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Review Appraisal Fee* | $200.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Process/Admin Fee to Broker* | $2,785.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Flood Certification Fee* | $11.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Underwriting Fee to GPM* | $250.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| Lender Paid Mortgage Taxes: | 0.00 |
|---|---|
| Total Fees Paid From Rebate: | N/A |

| RESERVES: | | | | BUYER | SELLER |
|---|---|---|---|---|---|
| Hazard Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Mortgage Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Flood Insurance | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| City Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| County Taxes | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Annual Assessments | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 1: | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Other Impound 2: | 0 | month @ $ 0.00 | /month | 0.00 | 0.00 |
| Aggregate Adjustment | | | | 0.00 | 0.00 |
| ** Please be aware that impounds are an estimate. | | | | | |

### PREPAID INTEREST:

| FROM: 12/05/2006 | TO: 12/01/2006 | = -4 | days | @$ 17.53 | / day = -70.12 |
|---|---|---|---|---|---|

WIRE/CHECK AMOUNT (available for wet-funds states only):    N/A

---

### LENDER CHARGES AND PREPARATION OF HUD-1

- Lender's (and other third-party) fees are indicated in the "Settlement Charges" section of these instructions. These charges are to be reflected precisely as labeled on the appropriate line of HUD-1. POC items must be reflected as such on HUD-1.

- Preliminary HUD-1 or preliminary closing statement must be reviewed and approved by closer/funder prior to closing.

- You have disclosed to us the loan settlement fees to be charged on this loan via the preliminary HUD-1 or preliminary closing statement. No changes to these fees are allowed without our written approval. If additional fees are charged without our approval, you will be required to refund the additional fees to the borrower. In addition to refunding the unapproved fees, you will be required to pay for any and all damages incurred by the Lender, borrower and seller as a result of your failure to follow any of these closing instructions.

- We require a final HUD-1 or HUD-1A RESPA Settlement Statement on all transactions. We rely solely upon the escrow agent to complete and deliver the "Statement of Actual Costs" in accordance with the Real Estate Settlement Procedures Act. A condition of our loan is that the escrow agent and title company accept all conditions set forth on this document and on the other pages and addenda of these instructions. The "Statement of Actual Costs" must be complete and delivered in accordance with such requirements in order that we are not subject to any claim for, or any damage, liability or penalty.

- All HUD-1's must clearly distinguish those costs associated with any Lender-approved secondary financing from those required by this loan.

# EXHIBIT C

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1719 Kehoe Avenue San Mateo, CA. 94401 | H | SFR | $ 800000 | $ 693977 | $ 0 | $ 4638 | $ 900 | 0 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | Totals | $ 800000 | $ 693977 | $ 0 | $ 4638 | $ 900 | 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name          Creditor Name          Account Number

---

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a. Purchase price | $ 0.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | Borrower | | Co-Borrower |
| | | | | Yes | No | Yes | No |
| b. Alterations, improvements, repairs | 0.00 | | | | | | |
| c. Land (if acquired separately) | 0.00 | a. Are there any outstanding judgments against you? | | | x | | |
| d. Refinance (incl. debts to be paid off) | 693,977.00 | b. Have you been declared bankrupt within the past 7 years? | | | x | | |
| e. Estimated prepaid items | 0.00 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | x | | |
| f. Estimated closing costs | 9,700.00 | d. Are you a party to a lawsuit? | | | x | | |
| g. PMI, MIP, Funding Fee | 0.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | x | | |
| h. Discount (if Borrower will pay) | 0.00 | | | | | | |
| i. Total costs (add items a through h) | 703,677.00 | | | | | | |
| j. Subordinate financing | 0,000.00 | | | | | | |
| k. Borrower's closing costs paid by Seller | -19,800.00 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | | x | | |
| l. Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | | x | | |
| | 0.00 | h. Is any part of the down payment borrowed? | | | x | | |
| | 0.00 | i. Are you a co-maker or endorser on a note? | | | x | | |
| | 0.00 | j. Are you a U.S. citizen? | | x | | | |
| | 0.00 | k. Are you a permanent resident alien? | | | x | | |
| | 0.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | x | | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 640,000.00 | m. Have you had an ownership interest in a property in the last three years? | | x | | | |
| n. PMI, MIP, Funding Fee financed | 0.00 | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | PR | | | |
| o. Loan amount (add m & n) | 640,000.00 | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 2,877.60 | | | | | | |

---

IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

---

X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [x] I do not wish to furnish this information. | | CO-BORROWER | [ ] I do not wish to furnish this information. |
|---|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino | | Ethnicity: | [ ] Hispanic or Latino   [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White | | Race: | [ ] American Indian or Alaska Native   [ ] Asian   [ ] Black or African American   [ ] Native Hawaiian or Other Pacific Islander   [ ] White |
| Sex: | [ ] Female   [ ] Male | | Sex: | [ ] Female   [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| This application was taken by: | | | AmeriWest Funding & Realty Group Inc |
| [ ] Face-to-face interview | Interviewer's Signature | Date 11/09/2006 | 1580 A Street Hayward, CA 94541 |
| [ ] Mail | | | |
| [x] Telephone | Interviewer's Phone Number (incl. area code) | | |
| [ ] Internet | (510) 300-1600 | | |

# EXHIBIT D

# GreenPoint Mortgage Funding, Inc.

# BROKER FUNDS DISBURSEMENT INSTRUCTIONS

| | | |
|---|---|---|
| Date: | November 30, 2006 | |
| To: | NORTH AMERICAN TITLE COMPANY | Loan Name: **Karim Allan** |
| | 39488 STEVENSON PLACE, #109 NORTH | Loan Number: **0203206180** |
| | FREMONT, CA 94539 | Escrow Number: 54613-56240984-RGP |
| Attn: | NORTH AMERICAN TITLE COMPANY | Order Number: **55912-56110677-DMW** |

The funds to pay the broker fees at time of closing may be included in the wire/draft amount sent to you. Unless notified otherwise by GreenPoint Mortgage Funding, Inc.., these funds are to be distributed by you after recordation of the loan to:

**AmeriWest Funding & Realty Group Inc**

**1380 A Street**

**Hayward, CA 94541**

**510-300-1600**

in the amount of:

| | | | | | |
|---|---|---|---|---|---|
| Origination Pts: | 0.500 | % | 640,000.00 | = | 3,200.00 |
| Broker Points: | 0.000 | % | 640,000.00 | = | 0.00 |
| Rebate | ( 3.000 | %) | | = | 19,200.00 |
| Broker Service Release Premium / **Broker Rebate** | | | | = | |
| Fees paid from rebate | | | | = | 0.00 |
| **SUBTOTAL** | | | | = | **22,400.00** |
| | | | | | |
| Broker Processing | | | | = | 2,785.00 |
| Credit Report Fee | | | | = | 0.00 |
| Appraisal Fee | | | | = | 0.00 |
| Other - | | | | = | 0.00 |
| Courier Fee | | | | = | 0.00 |
| **TOTAL DUE BROKER** | | | | | 25,185.00 |

GreenPoint Mortgage Funding, Inc. reserves the right to modify these instructions at any time prior to closing by further written instructions to you.

If you have any questions regarding the above changes, please notify this office prior to funding.

Acknowledged and Accepted -

Escrow Officer: _____

Date: _____

# EXHIBIT E

## DISCLOSURE OF CREDIT SCORE INFORMATION

| Borrower Name: | Lender: |
|---|---|
| Karim A Allen | GreenPoint Mortgage Funding, Inc. |
| **Property Address:** | 100 Wood Hollow Drive, Novato, CA 94945 |
| 1719 Kehoe Avenue, San Mateo, CA  94401 | |
| | **Date:** |
| | 11/09/2006 |

We are providing the following credit score information in connection with your loan application.

| | Equifax Credit Information Services P.O. Box 740241 Atlanta, GA 30374 1-800-685-1111 | Experian P.O. Box 2002 Allen, TX 75013 1-998-397-3742 | TransUnion P.O. Box 2000 Chester, PA 19022 1-800-916-8800 |
|---|---|---|---|
| **Credit Score Provider** | | | |
| **Current/Most Recent Credit Score** | 789 | 785 | 766 |
| **Range of Possible Credit Scores** | 300 - 850 | 300 - 850 | 300 - 850 |
| **Date of Credit Score** | 11/09/2006 | 11/09/2006 | 11/09/2006 |
| **Key Factors Adversely Affecting Score** | 30 -- TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT 08 -- TOO MANY INQUIRIES LAST 12 MONTHS 06 -- CONSUMER FINANCE ACCOUNTS 11 -- AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH | 08 -- TOO MANY INQUIRIES LAST 12 MONTHS 10 -- BALANCE TO CREDIT LIMIT IS TOO HIGH ON REVOLVING ACCOUNTS 06 -- CONSUMER FINANCE ACCOUNTS 09 -- TOO MANY ACCOUNTS OPENED IN LAST 12 MONTHS | 28 -- NUMBER OF ESTABLISHED ACCOUNTS 30 -- TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT 12 -- LENGTH OF REVOLVING CREDIT HISTORY TOO SHORT 08 -- TOO MANY INQUIRIES LAST 12 MONTHS |

VMP-135 (2501)
VMP Mortgage Solutions, Inc. (800)521-7291