United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIM ALLAN,<br><br>    Plaintiff,<br><br>  v.<br><br>GREENPOINT MORTGAGE FUNDING, et al.<br><br>    Defendants. | No. C 08-01534 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Plaintiff Allan's and Defendant GreenPoint Mortgage Funding's Cross-Motions for Summary Judgment** |

      Plaintiff Karim Allan ("Allan") brought this suit against GreenPoint Mortgage Funding ("GreenPoint"), a mortgage lender, and other defendants in March 2008, alleging various claims arising from the refinancing of Allan's home in late-2006. Allan's complaint asserted six causes of action against GreenPoint: (1) for violating the Real Estate Settlement Procedures Act ("RESPA") and related regulations, 12 U.S.C. §§ 2603, 2607, 24 C.F.R. §§ 3500.7, 3500.14; (2) for violating the Truth-in Lending Act ("TILA") and related regulations, 15 U.S.C. § 1601 *et seq.*, 12 C.F.R. §§ 226.17-226.19; (3) for violating the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-62; (4) for violating the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (5) for deceit, Cal. Civ. Code §§ 1709-10; and (6) for breach of fiduciary duty. Before the court are cross motions for summary judgment from Allan and GreenPoint. Allan moves for summary judgment in his favor on his first and second causes of action, arising under RESPA and TILA respectively. GreenPoint

moves for summary judgment in its favor on all six causes of action. Having considered the parties' submissions, and for the reasons discussed below, the court enters the following memorandum and order.

BACKGROUND

In the spring and summer of 2006, mortgage broker and co-defendant Ameriwest Funding & Realty Group ("Ameriwest") convinced Allan to refinance his home using Ameriwest's brokering services. Docket No. 38 (First Amended Complaint ("FAC")) at 19. Ameriwest submitted a loan application on Allan's behalf to GreenPoint, which GreenPoint received on November 9, 2006. Docket No. 75 (Stewart Dec.) ¶ 3; *id.*, Exh. A ("Major Events Log").

In response to this application, GreenPoint sent Allan a set of disclosures on November 9, 2006. Stewart Dec. ¶ 4; Major Events Log. Among these disclosures were the following documents:

- A "Truth-in-Lending Disclosure Statement," stating that the annual percentage rate of the proposed loan was 7.612%, and that the proposed loan would have a variable rate feature. Stewart Dec., Exh. C.

- A "Truth-in-Lending Summary Statement," which contained an entry stating "Term: 360", and on the line immediately below, "Interest Rate: 3.000." Toward the bottom of the page, this document stated "Index (if ARM [Adjustable Rate Mortgage]): 4.827," followed by "Fully Indexed Rate: 7.077." A space for indicating the "Index Date" was left blank. *Id.*

- A "Good Faith Estimate" ("GFE") of settlement costs. This GFE did not indicate that Allan's proposed loan would include any yield spread premium ("YSP").[1] *Id.*, Exh. D.

GreenPoint sent a second set of disclosures to Allan on November 13, 2006, including essentially the same documents but with different terms. Among this second set of disclosures were the following:

- A second "Truth-in-Lending Disclosure Statement," stating that the annual percentage rate of the proposed loan was 8.214%, and that the proposed loan would have a variable rate feature. *Id.*, Exh. G.[2]

- A second GFE, which also did not indicate that Allan's proposed loan would include any YSP. *Id.*, Exh. H.

2

1  GreenPoint has also submitted a second "Truth-in-Lending Summary Statement," which it claims it
2  sent to Allan in the second set of disclosures on November 13. *See* Stewart Dec., ¶ 5; *id.*, Exh. G.
3  However, this Truth-in-Lending Summary Statement is dated November 30, 2006, which (as is
4  discussed below) is the date that Allan received a third set of disclosures. This document contains
5  entries stating "Term: 360" and, on the following line, "Interest Rate: 1.000." At the bottom of the
6  page, it also states "Index (if ARM): 4.827," followed by "Fully Indexed Rate: 7.827"; it indicates a
7  "Index Date" of November 1, 2006.

Allan locked in his loan rate on November 29, 2006, and GreenPoint printed a third set of disclosures on the same day. Major Events Log. Allan received these disclosures along with the loan documents which he signed on November 30, 2006. This third set of disclosures included, *inter alia*, the following documents:

- A third "Truth-in-Lending Disclosure Statement," stating that the annual percentage rate of the loan was 7.933%, and that the loan had a variable rate feature. Stewart Dec., Exh. J.

- A second "Truth-in-Lending Summary Statement," whose terms are discussed above.

- A "New Loan Payment Form," which contained an entry stating "Interest Rate: 1.000" and a second entry indicating "Loan Type: Adjustable." Allan Mot., Exh. 5.

- An estimate of closing costs (known as a HUD-1) prepared by the closing agent, North American Title Company. Allan Mot., Exh. 14. This HUD-1 did not indicate that Allan's loan included a YSP.

- A document entitled "Lender's Closing Instructions." This document disclosed that Allan's loan included a YSP. Stewart Dec., Exh. O at 3.

This third set of disclosures did not include any GFE.

The loan closed on December 13, 2006. Major Events Log. As noted in the final loan documents, GreenPoint paid Ameriwest a YSP of $19,200. Stewart Dec., Exhs. O-P. On December 14, the closing agent prepared a second HUD-1 disclosing the YSP. Stewart Dec., Exh. P at 3.

After the loan closed, Allan received monthly statements indicating how much he owed on his loan. Allan Dep. at 247:10-247:16; 254:19-255:6. Allan stopped making payments on his loan in early-2008. *Id.* at 247:1-247:9. He then filed the complaint in this action on March 20, 2008.

3

Docket No. 1 (Compl.). In August 2009, Allan sold the property securing his loan, in a short sale. Docket No. 66 (Allan Dec.) ¶ 2.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Mere allegations or denials do not defeat a moving party's allegations. *Id.*; *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994). Instead, the party opposing summary judgment must present "significant probative evidence" supporting its allegations. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007). The court may not make credibility determinations. *Anderson*, 477 U.S. at 255. When there are cross-motions for summary judgment, the court must determine the merits of each motion and resolve all reasonable inferences against the moving party. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

DISCUSSION

Allan has moved for summary judgment on two of his claims: the RESPA claim, based on GreenPoint's alleged failure to disclose in advance that GreenPoint would pay a YSP to Ameriwest, and the TILA claim, based on allegedly false and misleading information in the disclosures

4

GreenPoint sent to Allan. GreenPoint in turn moves for summary judgment on all six of Allan's claims. With respect to Allan's RESPA and TILA claims, GreenPoint argues that they are time-barred, and that in any case, GreenPoint complied with the statutes' requirements. With respect to Allan's claims under RICO and the FHA, and Allan's claims for fraud and breach of fiduciary duty, GreenPoint argues that Allan has failed to present sufficient evidence to create a triable issue of fact on all the elements for which he will carry the burden of proof at trial.

As explained in more detail below, GreenPoint is entitled to summary judgment on all of Allan's claims, given Allan's failure to present any significant probative evidence to support the causes of action in his complaint. *See Bias*, 508 F.3d at 1218. The deficiencies in the record presented by Allan are conspicuous. Firstly, Allan's own declaration is only three paragraphs long, and contains nothing from which wrongful conduct by GreenPoint could be inferred. Allan Dec. Secondly, despite repeated objections to the documents submitted by GreenPoint, Allan has submitted no evidence of his own as to what disclosures he received from GreenPoint or what documents he signed at the loan closing. Instead, his exhibits contain only documents provided to him by GreenPoint in discovery, along with several questionably relevant pages printed from various public websites. Allan has not himself authenticated any of the documents submitted to this court, including those on which he relies for his claims, as having been actually received or signed by him. These evidentiary deficiencies are not rectified by the excessive length of Allan's moving papers.[3] In summary, Allan has presented no comprehensible story, supported by probative evidence, showing that he is entitled to relief from GreenPoint on any of his claims.

I.   RESPA claim

Allan argues that he is entitled to summary judgment on his RESPA claim because he did not receive either a GFE or a HUD-1 form disclosing the YSP that would be received by Ameriwest until after he had signed the final loan documents. However, even viewing the evidence in the light most favorable to Allan, his RESPA cause of action is time-barred. GreenPoint is therefore entitled to summary judgment on this claim.

5

Allan does not make clear what section of RESPA he relies upon in bringing his claim. The most directly applicable sections of RESPA are 12 U.S.C. section 2604(c), which requires the lender to provide a GFE, and 12 U.S.C. section 2603(a), which requires the lender to provide the HUD-1. However, neither of those sections provides for a private right of action. *See, e.g.*, *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997); *Urbina v. Homeview Lending Inc.*, 681 F. Supp. 2d 1254, 1259 (D. Nev. 2009); *Bloom v. Martin*, 865 F. Supp. 1377, 1384-85 (N.D. Cal. 1994) (Armstrong, J.), *aff'd on other grounds*, 77 F.3d 318 (9th Cir. 1996). Given that he is foreclosed from pursuing a claim under either section 2603 or 2604, Allan's claim might rest upon 12 U.S.C. section 2607, which creates liability on the part of lenders who provide kickbacks (which may include YSPs) to brokers who refer business to them. However, a private action for violation of section 2607 must be brought within one year of the date of occurrence of the violation. 12 U.S.C. § 2614. The violation in the instant case, if any, occurred in late-2006 when the YSP was paid by GreenPoint to Ameriwest. Allan's complaint was not filed until March 2008, fifteen months later, and after the statute of limitations would have expired.

Allan argues that the statutory period should be equitably tolled, on the ground that a reasonable person in his position would not have known that he had a claim against GreenPoint. In so arguing, Allan betrays his misunderstanding of the test for equitable tolling. Equitable tolling is appropriate only when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit *until the plaintiff can gather what information he needs*." *Id.* (emphasis added). In this case, Allan has not presented evidence that he was unable to obtain any vital information bearing on his claim. On the contrary, the evidence shows that Allan was provided at the loan signing on November 30, 2006, and at the loan closing on December 14, 2006, with documents disclosing the YSP. Stewart Dec., Exhs. O-P. Once Allan received documentation that Ameriwest had received a YSP, he would have known (1) that Ameriwest had received a YSP and (2) that the earlier GFE or

6

HUD-1 forms he had been provided with did not indicate that a YSP would be part of the transaction. At that point, Allan had constructive notice that earlier GFE and HUD-1s failed to disclose a YSP, as required by law.

Furthermore, the evidence also shows that Allan received monthly statements showing the amount he owed on his mortgage and the interest rate. Allan Dep. at 247:10-247:16, 253:21-256:7. This information was all that was required for Allan to know that he had a possible claim against GreenPoint. Allan's failure to realize that he had that information, and to act upon it, is not sufficient reason to extend the statute of limitations. Furthermore, Allan failed to take due diligence in scrutinizing the information he had in order to seek out a possible claim. *See* Allan Dep. at 254:19-255:12 (indicating that Allan did not look at his monthly statements every month). Allan presents no evidence that he acted with due diligence to uncover his claim. He rests instead on conclusory assertions about how long a reasonable person would take to realize that a claim existed. Such assertions are insufficient to justify equitable tolling. *See Brown v. Option One Mortg. Corp.*, No. C 09-5705 MHP, 2010 WL 1267774, at *4 (N.D. Cal. Apr. 1, 2010) (Patel, J.). The court therefore declines to toll the statute of limitations on Allan's RESPA claim.

Furthermore, the court notes that even if Allan's complaint had been timely filed, Allan has presented no evidence that the YSP constituted an illegal kickback in violation of RESPA. In order to decide whether a YSP is an illegal kickback, the court must consider first whether the broker actually performed any services for the compensation paid, and second whether the payments are reasonably related to the services performed. *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1207 (9th Cir. 2003). Here, Allan has presented no evidence relevant to either part of this test; instead, he has rested his entire RESPA claim on the failure of GreenPoint to disclose the YSP in advance. Allan's failure to provide significant probative evidence supporting this claim provides an independent ground for granting summary judgment to GreenPoint.

Accordingly, GreenPoint's motion for summary judgment on Allan's RESPA claim is GRANTED.

II.     TILA claim

7

Allan argues that he is entitled to summary judgment on his TILA claim because the disclosures he received, in particular the Truth-in-Lending Summary Statements, were false and misleading. However, this claim is also time-barred.

Claims under TILA are also subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). That statute of limitations begins to run on the date of the consummation of the loan transaction. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Since the loan transaction was consummated in late-2006, and Allan did not file his complaint until March 2008, his suit is time-barred.

As with his RESPA claim, Allan argues that the statute of limitations on his TILA claim should be equitably tolled, because a reasonable person in Allan's position would not have realized for some time that the actual terms of Allan's loan were different from the terms stated on the Truth-in-Lending Summary statements. Equitable tolling "may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.* However, Allan has again presented no evidence sufficient to justify equitable tolling. Specifically, Allan has not presented any evidence that he was lacking vital information necessary to bring his claim, or that he used due diligence to try to obtain such information. On the contrary, the evidence shows that Allan was presented with the Truth-in-Lending Summary Statements and the Truth-in-Lending Disclosure Statements before the loan signing and at the loan signing; furthermore, he was provided with monthly loan statements beginning immediately thereafter, indicating what amount he owed on the loan and what his interest rate was. Any inconsistency among these documents would have raised questions in the mind of a reasonable borrower, and provided a reasonable opportunity to discover the existence of a potential TILA claim. Therefore, equitable tolling is inappropriate. GreenPoint's motion for summary judgment on Allan's TILA claim is GRANTED.

In his opposition to GreenPoint's motion for summary judgment, Allan also asserts that GreenPoint is liable for violations of TILA committed by Ameriwest, because GreenPoint was aware of those violations. Even if this theory of liability were valid, the violations Allan alleges are based on documents he received in November 2006, and those documents provided Allan with all

8

the information he would need to be aware of any potential claim. As such, these putative claims are also time-barred, and are not subject to equitable tolling.

### III. RICO claim

Allan's third claim asserts that GreenPoint violated RICO by engaging in an unlawful enterprise to defraud homeowners who were refinancing their properties. However, Allan has again failed to present evidence to support this claim. Allan's evidence for his RICO claim consists of the loan disclosures that GreenPoint sent to Allan, GreenPoint's admission that it re-sold Allan's loans and servicing rights and several news reports on the existence of a loan processing infrastructure to which mortgage brokers had access. This evidence is not sufficient to permit any reasonable finder of fact to conclude that GreenPoint was part of an "enterprise" whose common purpose was to defraud homeowners. Since Allan has failed to present a genuine issue of material fact on this issue, GreenPoint's motion for summary judgment on Allan's RICO claims is GRANTED.

### IV. Fair Housing Act claim

Allan's fourth claim asserts that GreenPoint violated the Fair Housing Act by discriminating against Allan on the basis of his Palestinian origin. Allan has presented no evidence in support of this claim, and no argument in opposition to GreenPoint's motion for summary judgment on this claim. Therefore, GreenPoint's motion for summary judgment on Allan's FHA claim is GRANTED.

### V. Deceit

Allan's fifth claim is for deceit, in violation of California Civil Code sections 1709 and 1710. Allan bases this claim on the written disclosures which Allan received from GreenPoint, which Allan contends contain identifiable misrepresentations—specifically, the entry "Interest Rate: 3.000" on the November 9 Truth-in-Lending Summary Statement, the entry "Interest Rate: 1.000" on the November 30 Truth-in-Lending Summary Statement, and the entry "Interest Rate: 1.000" on the New Loan Payment Form. However, these documents fall short of constituting the significant probative evidence required for Allan's deceit claim to survive GreenPoint's motion for summary judgment. Firstly, each of these documents also indicates that the rate on Allan's loan is adjustable, and provides the adjustment index and the fully indexed rate. Secondly, these documents were each given to Allan in conjunction with other documents which more fully and completely explained the

loan that Allan was receiving. Allan has presented no evidence showing that GreenPoint falsely represented to him that these "3.000" and "1.000" entries indicated a fixed interest rate that he would pay throughout the life of his loan. Indeed, Allan has presented no evidence that he even spoke with a GreenPoint employee before signing his loans; Allan thus cannot claim that GreenPoint orally misrepresented the meaning of the loan disclosures. Allan Dep. at 216:7-216:24. Thirdly, Allan has presented no evidence that GreenPoint's alleged misrepresentations were made knowingly or negligently, as required by California Civil Code section 1710. Fourthly, Allan has not even presented evidence showing the actual interest rate of his mortgage on any given month. That is, the record does not provide any grounds for concluding that Allan's interest rate was actually different from the rates disclosed in the Summary Statements and New Loan Payment Form. Finally, Allan has not presented evidence showing that he relied on these documents in entering the loan, or suffered any damage based on the purported misrepresentations. Allan's failure to provide significant probative evidence requires summary judgment in favor of GreenPoint on Allan's claim for deceit. Accordingly, GreenPoint's motion for summary judgment on Allan's claim of deceit is GRANTED.

VI.     Breach of fiduciary duty

Allan's final claim is for breach of fiduciary duty. GreenPoint has moved for summary judgment on this claim on the ground that GreenPoint had no fiduciary duty to Allan.

The relationship between a lender and a borrower is not a fiduciary one, and so does not give rise to fiduciary duties. *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991). Allan appears not to dispute this point, but argues that GreenPoint assumed a fiduciary duty to Allan because GreenPoint was aware that Ameriwest, the mortgage broker, had breached its fiduciary duty to Allan. Allan does not (and could not) cite to any law, decisional or otherwise, to support this proposition. In the alternative, Allan argues that Ameriwest was not a real corporation, but rather a branch of GreenPoint, and therefore GreenPoint owed Allan a fiduciary duty. To support this contention, Allan points to several apparent irregularities in Ameriwest's articles of incorporation, and in the broker profile that GreenPoint maintained on Ameriwest. This evidence is

11

not sufficient to raise a genuine issue of material fact as to whether GreenPoint and Ameriwest were intertwined such that GreenPoint owed a fiduciary duty to Allan. Likewise, Allan's assertions that GreenPoint forged his signature on certain documents are irrelevant to his claim that Ameriwest was a branch of GreenPoint, and are themselves not supported by significant evidence. As Allan has presented no evidence that GreenPoint owed a fiduciary duty to him, GreenPoint's motion for summary judgment on Allan's breach of fiduciary duty claims is GRANTED.

CONCLUSION

The court cannot emphasize enough the need for counsel to support their arguments with sound, relevant and admissible evidence. Argument is not a substitute for evidence. In this case there is no declaration from the plaintiff that supports the claims being made, that provides the authentication and foundation for exhibits and ties them together, that supports the necessary elements of each claim, and that provides facts to establish a basis for equitable tolling. These matters are all within the knowledge of the plaintiff and, to the extent plaintiff lacks knowledge, he needs to explain the absence of knowledge. Plaintiff has done none of this and has utterly failed to support his claims with probative evidence, let alone "significant probative evidence."

Therefore, plaintiff's motion for summary judgment is DENIED and defendant GreenPoint's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: July 27, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

United States District Court
For the Northern District of California

# **ENDNOTES**

1. A YSP is a payment by a mortgage lender to a mortgage broker, made when the mortgage broker's client (the borrower) takes out a loan from the mortgage lender at a higher interest rate. This device allows borrowers to spread out their brokerage fees over the entire life of the loan, via a higher interest rate, rather than paying their brokers the entire fee at the time of closing. On the other hand, it can also permit unscrupulous brokers to make money at their clients' expense. *See Lane v. Residential Funding Corp.*, 323 F.3d 739, 743 (9th Cir. 2003).

2. Allan objects to GreenPoint's exhibits G and O attached to the declaration of Mia Stewart. Allan attached the documents included in exhibit G to his own evidentiary submissions, and therefore his objection carries no force. As for exhibit O, its contents have not proved dispositive for either parties' claims. Accordingly, Allan's objection is moot.

3. The court notes with disapproval that Allan's opposition to GreenPoint's motion for summary judgment exceeded the applicable page limit by three pages, and that Allan's reply brief in support of his own motion for summary judgment exceeded the applicable page limit by ten pages. *See* Civil Local Rule 7-4(b).